IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **CAROL A. HARDY**, <br> a.k.a. CAROL A. JOHNSON, <br><br> Defendant. | No. 17-03110-03-CR-S-SRB |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Nhan D. Nguyen, Assistant United States Attorney, and the defendant, Carol A. Hardy a.k.a. Carol A. Johnson ("the defendant"), represented by Marsha D. Jackson.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count One of the Superseding Indictment, charging her with a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), that is, conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. By entering into this plea

agreement, the defendant admits that she knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

Beginning on an unknown date, but at least as early as March 30, 2017, and continuing to on or about October 18, 2017, said dates being approximate, in Greene County, in the Western District of Missouri, and elsewhere, the defendant, Carol A. HARDY a.k.a. Carol A. Johnson (HARDY), knowingly and intentionally conspired and agreed with each other and with others, known and unknown, to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(A).

*Overview of the Drug Conspiracy*

Beginning on an unknown date, but at least as early as March 30, 2017, and continuing to on or about October 18, 2017, HARDY reached an agreement with Richard A. WACKER (WACKER) to distribute methamphetamine in the Springfield, Missouri, area. WACKER and Ronald A. STONE (STONE) were partners and lead a drug trafficking organization (DTO) that distributed at least 4.5 kilograms of methamphetamine (actual) in the Springfield, Missouri, area. The methamphetamine was purchased from Kansas City and Oklahoma City, and transported to the Springfield, Missouri, area by vehicle. HARDY was an upper-level distributor in the DTO that received pound-quantities of methamphetamine directly from WACKER. Because of HARDY relationship with WACKER, the drug quantity attributed to WACKER was reasonably foreseeable to her and was at least 4.5 kilograms of methamphetamine (actual).

*HARDY's Role in the Conspiracy*

On August 16, 2017, United States Drug Enforcement Administration (DEA) Special Agent (SA) Mark Hooten conducted an interview at the DEA Resident Office in Springfield, Missouri, with WACKER. WACKER voluntarily arranged the interview because he want to "get out of the business." During the course of the interview, WACKER identified his methamphetamine sources of supply in Oklahoma City, Oklahoma, and Kansas City, Missouri. WACKER explained that in June 2017, he purchased four pounds of methamphetamine for $18,500 in Oklahoma City. WACKER further described STONE as his partner and that they had two separate sources of supply in Kansas City, one of the sources was STONE's ex-wife "Tracy," whom STONE had recently purchased two kilograms from.

On October 18, 2017, SA Hooten sent a text message to WACKER and asked WACKER if he would be willing to speak to the DEA. WACKER agreed and responded to the DEA Resident Office in Springfield, Missouri.

2

During the interview, WACKER admitted to traveling to Oklahoma City to purchase five kilograms of methamphetamine on each occasion. The first trip occurred the week of October 1 to 7, 2017. Upon WACKER's return, he distributed two kilograms to HARDY, two kilograms to a male, and one kilogram to his son. On the second trip, upon WACKER's return, he left most of the methamphetamine at HARDY's residence and "fronted" one kilogram to Herbert DINGER (DINGER). In addition, WACKER stated that he had approximately $40,000 in U.S. currency at his residence, $30,000 of which WACKER admitted was from drug sales.

On the same date, DEA Task Force Officer (TFO) Nicholas Mittag applied for, and received, a State of Missouri search warrant for the residence of HARDY in Springfield, Missouri. During the execution of the warrant, DEA SA John Stuart found HARDY on a sofa in the living room. As SA Stuart approached HARDY, HARDY spontaneously stated, "Anything in here is mine!"

In a post-*Miranda* interview with HARDY, she stated that there was "quite a lot" of methamphetamine in a safe on the floor of the closet in the bedroom. HARDY handed SA Stuart a key to the safe, which she retrieved from her bra. SA Stuart used the key to open the safe. Inside the safe, SA Stuart found three Ziploc-style bags filled with approximately 1766 grams of methamphetamine.

On top the bed, TFO Mittag found, inside a purse, unused Ziploc-style bags, a digital scale, and a notebook containing a drug ledger.

On October 23, 2017, SA Stuart conducted another consensual interview with WACKER. WACKER explained that he started using methamphetamine in early 2017, with his son. WACKER and his son began selling small amounts of methamphetamine to support their habit.

WACKER identified his first methamphetamine source of supply as DINGER, which he received a total of four pounds.

In May 2017, his son, Michael Wacker, introduced him to a new source of supply in Springfield. After purchasing four ounces from his new source of supply, the source of supply introduced WACKER to another source of supply in Kansas City named "Coty." WACKER traveled to Kansas City and purchased a half of pound of methamphetamine utilizing "Coty." WACKER described "Coty" as the intermediary, who would set up the methamphetamine deals for others in Kansas City.

When WACKER returned to Springfield, some of the methamphetamine was given to STONE. WACKER estimated that he made four to five trips to Kansas City, purchasing a half a pound of methamphetamine on each occasion.

After the four or five trips, WACKER stopped traveling to Kansas City, and STONE would make the trips. WACKER stated that he would give STONE some, if not all, of the U.S. currency to make the methamphetamine purchases. WACKER estimated that STONE made four to five trips, purchasing a half a pound of methamphetamine on each occasion.

3

In approximately March 2017, WACKER resumed making trips to Kansas City with STONE. WACKER admitted to making two trips with STONE to purchase a half of a pound of methamphetamine on each occasion.

After the two trips, STONE made the trips without WACKER to Kansas City every two to three days. STONE purchased two pounds on each trip, one for STONE and one for WACKER.

STONE explained to WACKER that he was able to purchase directly from a Hispanic source of supply named "Flaca" without using "Coty." After a few deals, "Flaca" would meet STONE halfway between Springfield and Kansas City.

When SA Stuart asked WACKER about STONE's arrest on August 30, 2017, WACKER admitted to meeting STONE earlier on that date to give him $10,000 in U.S. currency to purchase a kilogram of methamphetamine.

SA Stuart asked WACKER about his source in Oklahoma City, WACKER explained that in the summer of 2017, he and STONE were having difficulty obtaining methamphetamine from their source of supply in Kansas City. Through HARDY, WACKER was introduced to a male who had a methamphetamine source of supply in Oklahoma City. WACKER and the male traveled to Oklahoma City and purchased five pounds of methamphetamine. Upon their return, WACKER distributed one pound to STONE, four ounces to the male with the source of supply in Oklahoma City, and the rest WACKER kept for re-distribution.

After STONE was arrested on August 30, 2017, WACKER drove to Kanas City to meet "Coty" and inquire about getting additional methamphetamine. "Coty" was unable to obtain any significant amounts. Approximately two days after STONE's arrest, WACKER drove from Kansas City to Oklahoma City, where he purchased five kilograms of methamphetamine for $45,000. When WACKER returned to Springfield, the methamphetamine was distributed as follows:

1. HARDY, one kilogram;
2. a female, one kilogram;
3. DINGER, one half to one pound; and
4. a male, what remained.

4. **<u>Use of Factual Admissions and Relevant Conduct</u>.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the

calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Superseding Indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which she is pleading guilty.

      5.    **Statutory Penalties.**  The defendant understands that, upon her plea of guilty to Count One of the Superseding Indictment, charging her with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, the minimum penalty the Court may impose is not less than 10 years' imprisonment, while the maximum penalty the Court may impose is not more than life imprisonment, not less than five years' supervised release, a $10 million fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

      6.    **Sentencing Procedures.**  The defendant acknowledges, understands and agrees to the following:

      a.    in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

      b.    the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c.    in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least five years;

      d.    the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

e. any sentence of imprisonment imposed by the Court will not allow for parole;

f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

g. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count Eight of the Superseding Indictment at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation

of the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts her pleas of guilty and this plea

agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

      a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

      b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1, which provides for a base offense level of 38;

      c. The parties have no agreement regarding the applicability of any enhancements applicable to the specific facts of this case and are free to object to the application of any enhancements applied in the Presentence Investigation Report;

      d. The applicable Guidelines adjustment is as follows:

            i. § 3C1.2, which provides for an increase of two levels;

The parties have no other agreements regarding the applicability of any other adjustments applicable to the specific facts of this case and are free to object to the application of any other adjustments applied in the Presentence Investigation Report;

      e. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Superseding Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to

void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the Superseding Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against her;

    e. the right to compel or subpoena witnesses to appear on her behalf; and

  f. the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that, by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that, if she pleads guilty, the Court may ask her questions about the offense to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands that she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

 15. **Waiver of Appellate and Post-Conviction Rights.**

  a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

  b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

 16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

  a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may

order restitution in connection with the conduct charged in any counts of the Superseding Indictment which are to be dismissed and all other uncharged, related criminal activity;

      b.      The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

      c.      The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

      d.      Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

      e.      At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

      f.      The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

      g.      The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing;

      h.      The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future; and

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that, in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys, or any other party to induce her to enter her plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be

interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Timothy A. Garrison**
United States Attorney

By

Dated:  07/17/2018

*/s/ Nhan D. Nguyen*
**NHAN D. NGUYEN**
Assistant United States Attorney
Missouri Bar No. 56877

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Superseding Indictment.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.

Dated:  07/17/2018

*/s/ Carol A. Hardy a.k.a. Carol A. Johnson*
**Carol A. Hardy a.k.a. Carol A. Johnson**
Defendant

I am Defendant Carol A. Hardy a.k.a. Carol A. Johnson's attorney.  I have fully explained to her her rights with respect to the offense charged in the Superseding Indictment.  Further, I have reviewed with her the provisions of the Sentencing Guidelines that might apply in this case.  I have carefully reviewed every part of this plea agreement with her.  To my knowledge, Carol A. Hardy a.k.a. Carol A. Johnson's decision to enter into this plea agreement is an informed and voluntary one.

Dated:  07/17/2018

*/s/ Marsha D. Jackson*
**Marsha D. Jackson**
Attorney for Defendant